## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **AHMIR J. KENYATTA,** | : | |
| | : | |
| | : | |
| Plaintiff, | : | Case No: **5:25-cv-04005-TC-RES** |
| | : | |
| v. | : | |
| | : | Judge: |
| **THE BOARD OF REGENTS OF WASHBURN UNIVERSITY,** | : | |
| | | |
| **EMILY GRANT,** *As an individual* | | |
| | | |
| **CHRISTOPHER B. CAREY,** *As an individual* | | |
| | | |
| **TINA F. BOTTS,** | | |
| | | |
| **JULIANN MAZACHEK,** | | |
| | | |
| **DANIELLE DEMPSEY-SWOPES** | | |
| | : | |
| | : | |
| | : | **JURY DEMANDED** |
| | : | |
| Defendants. | : | |

## COMPLAINT

**COMES NOW,** Ahmir J. Kenyatta the undersigned ("Plaintiff") hereby brings this action forthwith against The Board of Regents of Washburn University ("Washburn", "Washburn University" or "University"), Emily Grant, Christopher B. Carey, Tina F. Botts, Juliann Mazachek, and Danielle Dempsey-Swopes and as grounds thereto allege the following:

1

## I.    **PARTIES**

1.    Plaintiff Ahmir J. Kenyatta is a Juris Doctorate Candidate (J.D.) at Washburn University in the School of Law, who resides in Kansas and whose mailing address is 632 Tuttle Creek Blvd #1048, Manhattan, KS 66502.

2.    Washburn University is a public institution governed by the Board of Regents with its principal office located at 1700 SW College Ave, Topeka, KS 66621. Washburn University is accredited by the Higher Learning Commission (HLC) recognized by the United States Department of Education. Separately, the School of Law is accredited by the American Bar Association (ABA).

3.    Emily Grant is an individual working in Topeka, KS for Washburn University as its Associate Dean of Academic Affairs.

4.    JuliAnn Mazachek is an individual working in Topeka, KS for Washburn University and serves as its President responsible for all operations of the University.

5.    Christopher Baldwin Carey is an individual working in Topeka, KS for Washburn University and is employed as a non-tenured associate professor. Plaintiff alleges that Carey was a direct perpetrator as it relates to discrimination and Title IX claims.

6.    Tina Fernades Botts is an individual working in Topeka, KS for Washburn University and serves as a non-tenured assistant professor.

7.    Danielle Dempsey-Swopes is an individual working in Topeka, KS for Washburn University and serves as its Associate Dean of Student Affairs and is responsible for engaging in the accommodations interactive process.

## II.    **JURISDICTION AND VENUE**

8.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

9.     Jurisdiction of this Court is proper pursuant to federal question jurisdiction, 28 U.S.C. § 1331 as the claim relates to a matter of federal law.

10.     Supplemental Jurisdiction of this Court is proper pursuant to 28 U.S.C. §1367 as Plaintiffs state law claims including but not limited to Kansas Statutes Annotated §44-1001 are related under the American with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq and other federal laws.

11.     Venue is Proper in the United States District Court for Kansas pursuant to 28 U.S.C. § 1391(b) as defendants address is located at 1700 SW College Ave, Topeka, KS 66621.

## III.    <u>STATEMENT OF FACTS</u>

1.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

2.     On or around June 2024, Plaintiff was accepted into Washburn University's School of Law.  Plaintiff started at the University in or around August of 2024 and has been enrolled in the program successfully and in good standing since.

3.     The University has broad policies refusing to allow students extensions beyond deadlines specifically in its Juris Doctorate program. The broad policy does not account for students with various disabilities. As such Plaintiff needed accommodations under the American with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.  (ADA)

4.     Plaintiff attempted to engage in the interactive process pursuant to the ADA, Section 504, and relevant state law by e-mailing Accommodations@washburnlaw.edu.

3

Associate Dean of Student Affairs, Danielle Dempsey-Swopes met with the plaintiff to discuss his needs.

5.    Plaintiff followed the University's procedure, submitted medical documentation which included *Protected Health Information (PHI) including* but not limited to medical certification, assessment, and diagnostic information.

6.    Defendants granted some accommodation prior to the plaintiff starting school. Around two or so weeks after which the plaintiff began school, he had significant issues in his Legal Analysis, Research, and Writing I (LARW I) course which exacerbated his disability. Recognizing that the accommodations were no longer adequate to ensure his equal access to educational service, the plaintiff sought additional accommodations and received an additional medical certification.

7.    On or about September 10th, 2024, Associate Dean Dempsey-Swopes, an authorized agent of defendants, advised plaintiff that his request for a re-assignment in courses as a reasonable accommodation was denied. Defendants further opined that plaintiff was required to see an examination from an "educational psychologist" to justify his need for a different pedagogical methodology which plaintiff contends is improper, is contrary to the ADA and Section 504 substantively. After providing additional documentation, which was unduly burdensome in violation of ADA Amendments, and complaining almost daily plaintiff was moved after the faculty member voiced concerns about him to administration rather than due to his ripe request under the ADA.

IV.    **CAUSES OF ACTION**

8.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

***First Claim for Relief: Discrimination in Violation of The Americans with Disabilities Act of 1990***

9.    Defendants' behavior and intentions outlined herein and during discovery will demonstrate their failure to act in good faith and engage in the interactive process. Defendant was hyper-focused on determining the type of "qualified medical provider" plaintiff received a medical certification from the outset. The plaintiff contends that this is pre-textual in nature and demonstrates that defendants did not engage in a bona fide effort to determine that plaintiff has a qualifying disability, could complete the program with or without reasonable accommodations. It is not the role of an Administrator or Dean to look for diagnostic codes and attempt to map accommodations based on the code. Said Administrators lack a Doctor of Osteopathic Medicine (D.O), Medical Doctor (M.D.) or other credentials which would allow them to exercise the scope of practice including diagnosing, or assessing a patient based on diagnostic codes. The certification presented by plaintiff maintains the essential elements under the ADA, including qualifying medical condition, length of time, potential recommendations, and that it was issued by a duly qualified professional.

10.   The University overstepped its bounds and demonstrated their unwillingness to engage in an equitable, ethical, and lawful interactive process likely because they felt like the diagnosis were "invisible" or insignificant which is a barrier that many with disabilities face when going through the accommodation process in the employment or academic setting.

11.  The foregoing pre-text demonstrated defendants' unwillingness to engage in a fair interactive process. *Newell v. Cent. Mich. Univ. Bd. of Trustees,* 2020 WL 4584050 upholds the fundamental requirements of Institutions of Higher Education (IHE's) to engage in an interactive process.

12.  Plaintiff asserts that based on his interaction with the University and their failure to properly engage in the interactive process it demonstrates a pattern and practice issue at the University. In *Rogers v. Western University of Health Sciences,* 2019 WL 4887847 (9th Cir. Oct. 3, 2019) A student went to a dean about accommodations in which they needed and the dean responded, "lets see how the next exam goes." In plaintiffs experience, the school offered a similar response when he rebutted their failure to provide intermittent extensions up to approximately three days as needed. This statement demonstrates a nexus that the University adopts blanket policies instead of individualized assessments and an interactive process on a case-by-case basis. The landmark decision in *Guckenberger v. Boston University,* 957 F. Supp. 306 (D. Mass 1997) demonstrates the requirement of the interactive process in lieu of draconian policies that make blanket prohibitions. In plaintiffs' case, the University employs general practices that discriminate against students with disabilities.

13.  The accommodations requested by plaintiff do not fundamentally alter the requirements of the program, are not an undue administrative or financial burden, and do not cause any security or safety issues thus the University lacks an affirmative defense to denying said request in good faith. Plaintiff asserts that Defendant is constructively denying accommodations by their unlawful interpretation of attempting to map diagnostic codes and assert a scope of practice in an area where they lack

subject matter expertise nor the lawful authority to do so and that they are declaring exhaustion of the interactive process without merit.

***Second Claim for Relief: Discrimination in Violation of Section 504 of The Rehabilitation Act of 1973***

14.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

15.     Section 504 of the Rehabilitation Act of 1973 expressly prohibits an individual with a disability to be discriminated against but for their disability in any program or activity receiving federal financial assistance.

16.     Washburn University receives various forms of federal financial assistance, they are in the federal financial aid program and can receive grants through state and federal funds. Specially Section 504(b)(2)(a) states that a program or activity intended by this legislation includes "a college, university, or other postsecondary institution, or a public system of higher education." Thus, Washburn is covered under this legislation.

17.     Defendants' behavior toward the plaintiff demonstrates ubiquitous examples whereby plaintiff's rights under this legislation have been violated including contending (by way of their response) plaintiffs' diagnosis with a qualified disability, their refusal to engage in a bona fide interactive process, and their refusal to provide individualized reasonable accommodations allowing plaintiff equitable access to the program and University.

***Third Claim for Relief: Discrimination in Violation of Title VI of the Civil Rights Act of 1964***

18.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

19.     Title VI of the Civil Rights Act of 1964 expressly prohibits that no person in the United States shall, on the ground of race, color, or national origin be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

20.     Defendant asserts a need to direct the plaintiff to a particular medical provider to prove the legitimacy of his disability. Plaintiff is a black male at a Predominantly White Institution (PWI) and is a minority under several protected classes.

21.     Plaintiff can establish a prima facie cause of action under Title VI because plaintiff is a member of a protected class, plaintiff is seeking services, particularly an education from an entity receiving federal funding, and plaintiff has demonstrated behavior that purports he is treated differently compared to Caucasian students.

22.     As an example, several Caucasian students shared concerns with administrators including Associate Dean Emily Grant regarding issues in the Legal Writing program and lack of academic support, which is their right per American Bar Association Standard 510. These students did not receive unfavorably treatment up to threats of expulsion for doing so which is what plaintiff received.

23.     The plaintiff contends that the lack of good faith of defendant's actions are delineated by way of their own behavior specifically the clarity in their written emails to plaintiff. Defendants challenge the scope of practice of plaintiffs qualified medical provider rather than focusing on their duties under the law. This behavior violated University rules and was unethical. Plaintiff believes that this behavior aligns to patterns and practices of racial disparity at the University. Ironically, the university is located at the proverbial

epicenter of civil rights in education given its history in *Brown v. Board of Education*, 347

U.S. 483 (1954)

## *Fourth Claim for Relief: Discrimination in Violation of Kan. Stat. §44-1001*

24.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if

fully set forth herein.

25.    By way of the above styled statue the State of Kansas where defendant is located

and does business prohibits unlawful discrimination on the basis of both race and

disability.

26.    Defendants' actions and behaviors have expressly treated plaintiff differently due

to at least two of his protected classes which violate state statues in addition to the federal

statues listed herein.

## *Fifth Claim for Relief: Discrimination in Violation of Title IX of The Civil Rights Act*

27.  Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if

fully set forth herein.

28.  Plaintiff contends that he filed a good faith complaint under Title IX with the

University on or about January 5th, 2025. Kenyatta is a heterosexual male.

29.  Plaintiff alleges that a Male Professor Christopher "Chris" B. Carey treated him,

and other males differently and negatively compared female students by way of

responses to questions in the classroom, during one-on-one interactions. Defendant

Carey appeared to flirt with students who are women, got visibly flushed in the face,

and even appeared to have erections in class with a temporal proximity to those conversations with female students. Plaintiff contends that the Defendant Carey applied grades much more favorably to female students ostensibly due to their sex. Carey also appeared to extend and provide additional office hours to female students as opposed to males. Plaintiff has had office hours and appointments denied but has seen Defendant Carey with female students instead. Plaintiff contends that a reasonable person would believe that the above actions could be so egregious or extreme or outrageous that they need not be pervasive to meet a prima facie claim under Title IX. Moreover, A reasonable prudent jury could likely conclude that the foregoing behavior would be outrageous from a University Professor in a classroom full of students.

30. Plaintiff received adverse action in the academic setting with grades and lack of support but for his gender therefore the complainant can assert a prima facie claim under Title IX. Additionally, as a result of defendants conduct plaintiff was denied equitable access to an education but for his sex. Due to his status as a male Defendant Carey denied him equitable access, issued him a failing grade in violation of Title IX.

31. It is standard across most public and private institutions to place interim measures in pending a Title IX claim. Defendants did not and constructively refused interim measures such as a "No Contact" Order, and transferring classes. Administrators argued that plaintiff already transferred one time although that had no nexus to his Title IX claims.

32.  On or about January 14th, 2025, the school's Title IX Coordinator advised that in order to receive any type of interim measures she needed dates. Plaintiff contends that this is a gross departure from industry practices as it relates to proper handling of Title IX claims.

33.  Plaintiff has yet to receive interim measures even after requesting a "No-Contact" order as recently as January 21st, 2025. Instead, the University appears to believe likely due to the fact that plaintiff is a male he cannot make a Title IX claim citing that this is a "third party claim".

34.  It is important to clarify the pleading standard. While the Honorable Tenth Circuit has yet to rule on a pleading standard directly as other circuits such as the Sixth and many others the court should consider the hybrid approach the Tenth Circuit has used in evaluating Title IX claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), states

> "[t]he Twombly/Iqbal standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or formulaic recitation of the elements of a cause of action, which the Court stated will not do. In other words, Rule 8(a)(2) still lives....Under Rule 8, specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the ground upon which it rests."

35.  The University has egregiously mishandled plaintiff claims and taken adverse action against him.

### ***Sixth Claim for Relief: Retaliation in Violation of Section 504 of the Rehabilitation Act***

36.  Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

37.  Plaintiff complained several times to the University in writing up to the President, Board of Regents, and even General Counsel in an attempt to address concerns

amicably. Instead of work in good faith to resolve plaintiffs well-reasoned concerns and uphold his right to equal access to education he instead was threatened by multiple Caucasian males. The temporal proximity between plaintiffs' complaints of discrimination on the basis of disability and race and threats from administrators threatening to sanction him are retaliatory in nature in an attempt to oppress him and punish him for admonishing unlawful activities by the university and its staff which violate various laws. Within days of on of plaintiff's complaints the University Provost demanded that he stop expressing his concerns to various administrators, coined plaintiff as "abrasive" and as a "harasser" and threatened to notify bar authorities as he knew this plaintiff was undergoing a character and fitness assessment to enter the state bar. Plaintiff contends that defendants did this as a result of his complaints to quiet him, and it was retaliatory.

38.  Plaintiff contends that after advocating for necessary accommodations under the ADA and being forced to disclose his disability to Defendant Carey in particular, he was treated differently in the classroom, Defendant Carey denied extensions made comments amounting to the fact that he "did not care" about the plaintiff's disability.

39.  Plaintiff argues that the indifference toward his requested accommodations and disability prohibited his equitable access to a public education program.

### *Seventh Claim for Relief: Deliberate Indifference to Concerns Reported under Title IX*

40.  Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

41.  Defendant acted with deliberate indifference when they received actual notice of plaintiffs Title IX claims and request for interim measures.

42.   Defendants had notice in early January specifically of Title IX claims, they had notice months earlier regarding claims under ADA, 504, and other relevant laws.

43.   Particularly as it relates to Title IX claims, plaintiff immediately requested interim measures. In fact, the plaintiff on his own dropped Carey's course, signed up for the same course in a different section to protect himself from the same, or escalated behavior by Defendant Carey. The school's Registrar Corey Payne, copying Associate Dean Emily Grant, advised plaintiff that she took the liberty to remove him from the section A3 which he switched himself to, and put him back with Defendant Carey. While defendants could argue that the registrar lacked knowledge, Associate Dean Grant, an administrator, leader, and authorized agent of the School of Law, knew full well of Title IX claims. Rather than order staff to hold on any changes pending the Title IX Coordinator stepping in, it appeared that she ordered his transfer back with Defendant Carey despite knowing of concerns create a prima facie case under Title IX.

44.   The University's own policies discuss that interim or supportive measures are preliminary step of the process and can occur without a formal complaint this demonstrates that the University deviation from its own policies.

45.   Outside of internal policies similarly situated University's also implement interim and supportive measures absent the full investigatory processes. Yet, in this instant matter, plaintiff was told by defendants that they needed dates and times of behaviors, even after a proper Title IX complaint was filed. This demonstrates that they did not take plaintiffs' claims seriously, there was no administrative burden to transfer plaintiff, yet the University decided not to simply because it is their purported policy not to transfer students. This policy is not in writing or adopted by the law school.

Even if such policy was in place, plaintiff contends that the various federal laws pled herein would allow deviation from the policy to protect plaintiff and any other student with a prima facie Title IX claim.

46.   In *Doe v. Sarah Lawrence College*, 453 F.Supp.3d 653 (2020), the student was able to proceed with a prima facie claim that the University mishandled her allegations under Title IX. In fact, after reporting allegations under Title IX, the school had actual notice of the concerns, yet took steps to exclude her academically although her issues academically were but for sexual misconduct under Title IX. Like in this instant matter, the school had knowledge of claims. Additionally, in Doe, plaintiff alleged that she was essentially going in circles with university officials about a claim and whether the complaint was formal or informal and ultimately, the University hurriedly tried to dismiss the claim without due process to *Doe*. In this instant matter, The University is aware of plaintiff's claim, plaintiff requested interim measures on multiple occurrences, and despite this The University has constructively denied his request by saying they need more information albeit, a formal complaint under Title IX was submitted and signed by plaintiff and the University's own policy mention interim measures can be implemented far before this.

47.   Moreover, the University's own policy has provisions for emergency removal of respondents yet there is no evidence that the University applied this standard to Defendant Carey.

48.   In *Doe v. Morgan State University*, 544 F.Supp.3d 563, the university attempted to argue that failing to issue a no-contact order, in that instance a second one could not meet the deliberate indifference burden rather if anything it was negligence. The court

14

held that under the facts in that case there was deliberate indifference. In this case, plaintiff can assert both claims of negligence and deliberate indifference. Defendant Washburn University, had notice, did not conduct a thorough investigation but had a complaint alleging a prima facie Title IX cause and instead of implementing protective measures rather "victim shamed" the plaintiff likely because he was a heterosexual male claiming sexual harassment and given societal biases that follow therein.

49.  If this court views the pleading in light most favorable to the plaintiff in this instant matter, plaintiff can successfully assert a claim of negligence and deliberate indifference through to jury trial as a reasonable juror on the facts could find in favor of the plaintiff. Moreover, there is a genuine dispute as to whether defendants took legally required actions under Title IX and other relevant laws.

50.  On or about January 15th, 2025, after items such as being stared and glared at by the Defendant Carey after plaintiff filed his Title IX concerns, he again appealed to the University including to the President directly for supportive measures.

51.  The University had ample opportunity directly after the filing of a properly filed Title IX complaint to issue interim measures. The standard under Department of Education Guidance is that a formal complaint need not be filed, in fact after a conversation with a Title IX official supportive measure can be put in place pending any next steps.

52.  Defendant knew or should have known the best practices under Title IX, had such knowledge because they have a duty to provide internal Title IX training, and despite this still refused to protect plaintiff. This plaintiff is aware that Husch Blackwell a well known firm with a practice area in higher education law has provided training to this

University, so they in fact have had training in this area of law. Their blatant failure to protect the plaintiff is improper, had no regard for plaintiffs' rights to equal access to education regardless of his sex, and was deliberately indifferent toward him and his properly filed Title IX claim.

53.  As of January 22nd, 2025 the University still failed to issue interim measures to protect plaintiff. After discussing options to separate plaintiff from Defendant Carey the University agreed to place plaintiff with Dr. Tina Fernandes Botts a Legal Writing Professor for Legal Writing II, which plaintiff is entitled to take with the rest of his cohort. The University agreed to this on or about January 17th. On or about January 21st The University advised that this was not an option due to plaintiff's "reputation". The reputation Defendant's discuss is pre-textual for plaintiff exercising his rights under The ADA to request accommodations and under Title IX to share concerns about the foregoing male professor. Title IX clearly protects complainants from retaliation.

54.  The university has advised plaintiff that he can stop out (ending his law school journey for an extended time period) until next year when they have a Legal Writing II Professor willing to teach him or he can retake Legal Writing I, which he is not required to re-take as he passed it. The University has demolished the legislative intent of Title IX and the law itself by flagrantly retaliating against the plaintiff.  a constructive expulsion or exclusion from a state public institution without due process

55.  Plaintiff asked the University to allow him to drop the course and continue his Juris Doctorate requirements as it is not his fault that a professor does not want to teach him, and at a state public institution he has a right to equal educational

opportunity. The University refused any other options and encouraged him to stop out until next year or retake LARW I although he passed because of their availability of Professors, shattering his degree and graduation plans and making his law program longer but for his Title IX complaints and engagement in free speech.

### *Eighth Claim for Relief: Negligence*

56.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

57.    Washburn as an entity that receives public funds, and as a public university is an entity covered by Title IX. The legislative intent of The Civil Rights Act is to protect individuals on the basis of several protected classes, particularly in Title IX that is sex.

58.    The University has a duty under Title IX to receive a complaint, investigate diligently, and afford interim measures to the complainant. The University had actual notice by way of emails, and a formal complaint.

59.    The University constructively refused to initiate interim measures and breached a duty. This failure was deliberate, breached the normal standards in Title IX Investigations and as a result the plaintiff suffered severe emotional harm and distress.

60.    President Mazachek and The Board of Regents negligently supervised law school administrators given "academic freedom" which caused this plaintiff harm.

### *Ninth Claim for Relief: Deprivation of Constitutional Rights, Liberties and Violation(s) of 42 U.S.C. §1983*

61.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

62.   Defendant University and its officers including but not limited to President JuliAnn Mazachek, its provost John Fritch and Associate Dean of Academic Affairs Emily Grant have deprived and continue to deprive plaintiff of rights secured to him by the United States Constitution namely the first amendment.

63.   Defendant's actions such as continuing to threaten to sanction the plaintiff when he protests Equal Opportunity related concerns, Title VI, and IX claims and concerns around University policy is immoral, improper, and unlawful. When plaintiff made good faith concerns and expressed to officials the actions he would take to redress such issues the University oppressed him, castigated him even threatening to attempt to cause issues with his application to the Board of Bar Examiners which issues law licenses and allows individuals to practice as attorneys. The latter threat by defendants can be taken as is, and the intent is inherently to permanently cease plaintiff from exercising his civil rights.

64.   Plaintiff attempted to assert his first amendment rights on multiple occasions, yet defendants attempted to use threats of sanctions up to what plaintiff believed would be expulsion, and demerits to the state bar to unlawfully silence him. Yet, defendants do cannot silence organizations such as Westboro Baptist Church who frequently express their perspectives on campus and rightfully do so under protected free speech, the majority of members of that organization are Caucasian and plaintiff is black.

65.   When the University advised plaintiff that they agreed for him to take Dr. Botts LARW II course he emailed Dr. Botts and introduction email letting her know that he looked forward to working with her and would need accommodations under the ADA and academic support to be successful in her class. Instead of engaging in the interactive process the University on or about January 21st advised (through Associate Dean

Dempsey-Swopes) plaintiff that he could no longer take Bott's class after he merely requested accommodations as he did in every other class. Plaintiff had a right to engage in a conversation, he expressed himself exercised his freedom of expression by letting the school know his needs under ADA politely and was castigated by the school and effectively had his access to equal education destroyed.

66. Defendants acted under color of law specifically The Board of Regents and President Mazachek when they were acting in their roles as officers of a public institution when they castrate plaintiffs' freedom of speech and expression which is a flagrant violation of his fundamental liberty and constitutional rights. Defendants' actions are ripe under 42 U.S.C. §1983.

### Tenth Claim for Relief: Violations of K.S.A. 45-215 Kansas Open Records Act (KORA)

67. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

68. Plaintiff has made multiple requests under the Kansas Open Records Act, many times seeking some of the data to further illustrate his complaints with the University. Plaintiff recently requested course evaluation data (even redacted) and due to faculty dissatisfaction as shared in a faculty meeting the University deemed plaintiffs request for course evaluation data. Initially, defendants provided copies to plaintiff but after faculty uproar defendants arbitrarily and in violation of KORA improperly and inappropriately claim an exemption under KSA 45-221(a)(4).

69. The plain language statute of the exemption defendants assert reads as follows:

> "Personnel records, performance ratings or individually identifiable records pertaining to employees or applicants for employment, except that this exemption shall not apply to the names, positions, salaries or actual compensation employment contracts or employment-related contracts or

agreements and lengths of service of officers and employees of public agencies once they are employed as such."

Course evaluation data is not data that is an industry standard to be held in a personnel file, and in fact it is not a performance rating, those are done by separate form. Defendant is merely trying to stretch the plain language meaning of the statute and attempting to subvert Kansas law in a manner which is self-serving to drive faculty satisfaction because they were upset.

70.    Under the legislative intent of KORA, the University's desire to keep their staff happy is not a lawful reason to withhold information generally available to the public. In fact defendants behavior attempts to destroy access to open government and transparency.

### *Eleventh Claim for Relief: Infringement on Plaintiff's Due Process Rights*

71.    Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

72.    Plaintiff has a legitimate entitlement to a public education as a property interest protected by due process as a constitutional right under the fourteenth amendment.

73.    University's exclusion of plaintiff from access to a public education, specifically a course he is entitled to take as are his peers without due process is unconstitutional. He has not been suspended, expelled, or excluded for cause thus the University's position unduly prejudices him and aims to strip his constitutional protections.

### *Conclusion*

74. Plaintiff has attempted to resolve several of the claims in good faith with defendants to no avail, even proposing mediation. However, the University continues its pattern and practice of subverting the law and prejudicing this plaintiff.

## V.    <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues.

## VI.    <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff respectfully request this Honorable Court:

1. Adjudge and decree that defendants' actions violate the ADA, Section 504 of the Rehabilitation Act, Title IX Of the Civil Rights Act, Kansas Open Records Act and any other Kansas Law and the state and United States Constitution and issue declaratory judgement in the same;

2. Adjudge and decree that defendant's pattern and practices prejudice students on the basis of race and disability violating the preceding state and federal laws;

3. Temporarily Enjoin defendant from taking any discriminatory action against plaintiff and any other student in protected classes in any law school programs at the University pending disposition of this litigation;

4. Issue declaratory action mandating University to implement interim measures under Title ix;

5. Award plaintiff compensatory damages, fees, and cost;

6. Issue an order pursuant to 28 U.S.C. §652 requiring parties to in good faith consider Alternate Dispute Resolution;

7. Award plaintiff equitable and all other relief this Honorable Court finds just and proper.

RESPECTFULLY SUBMITTED,

January 22nd, 2025

s/ Ahmir J. Kenyatta

Ahmir J. Kenyatta
632 Tuttle Creek Blvd. #1048
Manhattan, KS 66502
C: 513-675-8643
akenyatta@paradigmwfs.com